UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| U.S. BANCORP EQUIPMENT FINANCE, INC. | * | CIVIL ACTION |
| VERSUS | * | NUMBER: 06-10944 |
| LOEWS EXPRESS L.L.C., ET AL. | * | SECTION "L" (4) |

## ORDER & REASONS

Before the Court are the Plaintiff's and Defendants' cross motions for summary judgment. For the following reasons, the Plaintiff's motion (Rec. Doc. 16) is GRANTED and the Defendants' motion (Rec. Doc. 17) is DENIED.

### I.   BACKGROUND

This case arises out of two lease agreements entered into by Loews Express, L.L.C. ("Loews") for the lease of four tour buses. Loews is a Louisiana limited liability company with its principal place of business in New Orleans, Louisiana, and its sole member is Otis Lain, Jr., a citizen of Georgia.

In 1999, Loews entered into a lease agreement and subsequent schedules with Green Tree Leasing Trust ("Green Tree"), whereby Green Tree agreed to lease two tour buses to Loews for certain monthly payments over an eighty-four month term. By a contemporaneous guaranty agreement, Mr. Lain and his wife, Estella Lain, "absolutely, unconditionally and irrevocably" personally guaranteed Loews' payment and other obligations under the Green Tree lease. In 2000, Loews entered into a separate lease agreement and subsequent supplements with Firstar Equipment Finance ("Firstar"), whereby Firstar agreed to lease another two tour buses to Loews for certain monthly payments over varying terms. Again, by a contemporaneous guaranty

1

agreement, Mr. Lain unconditionally and absolutely personally guaranteed Loews' payment and other obligations under the Firstar lease.  Green Tree and Firstar later assigned and transferred these leases to U.S. Bancorp Equipment Finance, Inc. ("U.S. Bancorp").  U.S. Bancorp is an Oregon corporation with its principal place of business in Portland, Oregon.

In the immediate aftermath of Hurricane Katrina, Loews' buses were commandeered by the New Orleans Police Department and used to evacuate citizens from the flooding city.  It took Loews several months to locate and recover the buses, which had been scattered across the region by the evacuation.  Thus, the buses were out of its possession for several months. Moreover, because of the devastation wrought by Hurricane Katrina and the subsequent levee failures, there was little demand in New Orleans for Loews' services in the months following the storm.

As a result of these difficult circumstances, Loews' business was essentially destroyed and it did not make the required lease payments on the buses from September 2005 to June 2006. In early 2006, U.S. Bancorp notified Loews in writing on several occasions that it had defaulted on the leases and demanded that Loews surrender the buses.  When Loews refused, U.S. Bancorp filed suit for the surrender of the leased vehicles pursuant to the Louisiana Lease of Movables Act, La. R.S. § 9:3301, et seq.  *See U.S. Bancorp Equipment Finance, Inc. v. Loews Express, L.L.C., et al.*, No. 06-1738 (E.D. La. filed Mar. 31, 2006).  On May 23, 2006, this Court entered a final judgment ordering Loews to surrender the buses, and reserving to U.S. Bancorp the right to seek damages, liquidated damages, interest, late fees, and attorney's fees under the leases. Following the Court's final judgment, U.S. Bancorp obtained possession of, and subsequently sold, the buses that had been leased to Loews.  Accounting for the proceeds received in the sales,

it is undisputed that the outstanding amount due under the Green Tree lease is $238,228.68 plus the appropriate interest and that the outstanding amount due under the Firstar lease is $279,086.45 plus the appropriate interest.[1]

---

[1] Both the Green Tree and Firstar leases provide that Loews shall bear all risk of loss of, or damage to, the buses and that Loews shall maintain, at its own expense, appropriate insurance. With respect to these matters, the Green Tree lease specifically provides as follows:

> 8. LOSS OF OR DAMAGE TO A VEHICLE. Lessee shall bear all risk of loss of or damage to a Vehicle however arising until such Vehicle is returned to and sold by Lessor. Lessee shall promptly notify Lessor if any Vehicle is lost, stolen, damaged, or destroyed. Lessor shall have no obligation to repair or replace any such Vehicle. There shall be no abatement of Monthly Rental or Additional Rental due hereunder in the event of such loss or damage or during the period a Vehicle is stolen or missing or during the time required for any repair, adjustment, servicing or replacement of Vehicle. . . .
>
> 9. INSURANCE. Lessee shall provide and maintain liability . . . coverage and physical damage insurance for . . . damage to or loss of Vehicles by collision, fire, theft, or otherwise, from the time each Vehicle is delivered to Lessee until the Vehicle is sold after return to Lessor and legal title passes to the purchaser thereof. . . .

See Ex. A-1 to Pl.'s Mot. for Summ. J. (Rec. Doc. 16-5). Similarly, the Firstar lease specifically provides as follows:

> 14. REPAIRS; LOSS AND DAMAGE. Lessee, at its own cost and expense, shall keep the Equipment in good repair, condition and working order . . . All risk of loss, damage, theft or destruction with respect to the Equipment shall be borne by Lessee. . . .
>
>         . . . .
>
> 22. INSURANCE. At its own expense, Lessee shall obtain and maintain for the Lease Term, physical damage and liability insurance. The physical damage insurance shall insure against loss or damage to each item of Equipment including, without limitation, loss by fire, explosion, wind, hail, flood, malicious mischief, vandalism, theft, collision, upset, overturn, glass breakage and any other physical loss to each item of Equipment. . . .

See Ex. A-8 to Pl.'s Mot. for Summ. J. (Rec. Doc. 16-12).

On December 14, 2006, U.S. Bancorp ("Plaintiff") filed the instant suit against Loews and the Lains ("Defendants") seeking to collect the amounts due under the leases, in addition to attorney's fees, expenses, and costs. After meeting with the parties and determining that they agreed upon the underlying factual issues, the Court suggested that cross motions for summary judgment be filed. In the instant motions, the parties do not dispute that Loews breached the leases nor that the Lains are guarantors of Loews' obligations under the leases. Nor do the parties dispute the amounts due under the leases. The sole issue presented by these motions is whether Hurricane Katrina and her aftermath, and the commandeering of the buses by the New Orleans Police Department, were fortuitous events that made performance of the leases impossible, thereby relieving Loews of its obligations under the leases and thus extinguishing the Lains' accessory obligations under the guaranty agreements. If not, the Defendants concede that they will be liable *in solido* for the amounts due under the leases plus fees, expenses, and costs.

## II.    LAW & ANALYSIS

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 137 (5th Cir. 2004).

In this diversity case, the parties agree that Louisiana's substantive law controls. "To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court." *Am. Int'l Specialty Lines Ins. Co v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). In the absence of a final decision by the Supreme Court of Louisiana, this Court must make an *Erie* guess and determine "how that court would resolve the issue if presented with the same case." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). In making such a guess in this case, the Court will "employ the appropriate Louisiana civilian methodology to decide the issues presented." *Am. Int'l Specialty Lines Ins. Co.*, 352 F.3d at 260. This methodology requires that the Court first examine the primary sources of law in Louisiana, namely the constitution, codes, and statutes. *Id.* "Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante*, is merely a secondary law source." *Id.* at 261 (internal quotations omitted).

Under Louisiana law, "[s]uretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. Civ. Code Ann. art. 3035. "Suretyship may be established for any lawful obligation." La. Civ. Code Ann. art. 3036. In this case, it is undisputed that the Lains personally guaranteed Loews' obligations under the Green Tree lease, and that Mr. Lain personally guaranteed Loews' obligations under the Firstar lease. Therefore, unless a fortuitous event rendered Loews' performance of the leases impossible, Loews and the Lains will be liable *in solido* under the Green Tree lease, and Loews and Mr. Lain will be liable *in solido* under the Firstar Lease.

In Louisiana, "[a]n obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible," unless the obligor "assumed the risk of

5

such a fortuitous event." La. Civ. Code Ann. art. 1873.  A fortuitous event is defined by the Civil Code as "one that, at the time the contract was made, could not have been reasonably foreseen." La. Civ. Code Ann. art. 1875.  "When the entire performance owed by one party has become impossible because of a fortuitous event, the contract is dissolved." La. Civ. Code Ann. art. 1876.  However, an obligor is "not released from his duty to perform under a contract by the mere fact that such performance has been made more difficult or more burdensome by a fortuitous event." *Schenck v. Capri Constr. Co.,* 194 So. 2d 378, 380 (La. Ct. App. 1967).  *See generally* Saul Litvinoff, *Force Majeure, Failure of Cause and Theorie De L'Imprevision: Louisiana Law and Beyond*, 46 La. L. Rev. 1, 3 (1985) ("In Louisiana, absent absolute impossibility, an obligor is bound to render performance.").[2]

This Court will assume for the sake of argument that the Supreme Court of Louisiana would find that Hurricane Katrina and her aftermath, including the commandeering of the buses in this case, were "fortuitous events" as contemplated by Article 1873.  Indeed, another Section of this Court recently refused to hold "as a matter of law that Katrina *and her aftermath* are not fortuitous events under Louisiana law." *Citadel Builders, LLC v. Transcon. Realty Investors, Inc.*, No. 06-7719, 2007 WL 1805666 at *4 (E.D. La. June 22, 2007) (emphasis in original). Notwithstanding the fact that hurricanes are a "common occurrence" in New Orleans, the *Citadel*

---

[2] "As a matter of legal semantics, 'impossibility of performance' is the English equivalent of the French '*cas fortuit ou force majeure*.'  In spite of strenuous doctrinal efforts to distinguish between *cas fortuit* (fortuitous event) and *force majeure* (irresistible force), the jurisprudence, in France, Louisiana, and even at common law, uses the two expressions interchangeably.  Modern codes have eliminated one or the other of the two expressions. . . . The expression 'fortuitous event' has been chosen for this revision because it implicitly encompasses the companion concept, especially when the event must be such as to make performance impossible, as this Article provides." La. Civ. Code Ann. art. 1873 Revision Comment (c) (internal citations omitted).

court found that "Katrina devastated this area in ways beyond what anyone predicted when the levee system failed." *Id.; see also Associated Acquisitions, L.L.C. v. Carbone Props. of Audubon, L.L.C.*, No. 07-120 (La. App. 4 Cir. 7/11/07), 962 So. 2d 1102, 1106 ("Even with our foreknowledge that the hurricane was rearing its way toward the state, the damage and effects of the storm were unexpected and unprecedented.").

Therefore, the controlling question in this case becomes whether or not these fortuitous events rendered "performance impossible." La. Civ. Code Ann. art. 1873. The Defendants' performance under the leases and guaranty agreements consisted solely of making rental payments for the buses. Thus, the Defendants' Article 1873 argument is essentially one of economic infeasibility. The Defendants contend that Loews was unable to operate its tour services in the months following Hurricane Katrina, and that therefore Loews and the Lains should be relieved of the obligation of paying rent for the buses.

Looking first to the final decisions of the Supreme Court of Louisiana, the Court notes that similar arguments have been rejected following previous disasters. For example, in *Dallas Cooperage & Woodenware Co. v. Creston Hoop Co.*, 109 So. 844 (La. 1926), the defendant argued that it was unable to deliver "two cars of six-foot coiled elm hoops" due to the difficulty of obtaining "elm logs with which to manufacture hoops" following the excessive rains of 1919 and 1920. The Supreme Court of Louisiana rejected this argument:

> It was immaterial to the plaintiff how the defendant secured the article which it was obligated to deliver. The contract was not impossible of fulfillment, and, if defendant was unable to manufacture the hoops at its own mill, it should have procured them from other manufacturers or dealers in the same line of business. The nonperformance of a contract is not excused by a fortuitous event where it may be carried into effect, although not in the manner contemplated by the obligor at the time the contract was entered into.

109 So. at 844; *see also Picard Const. Co. v. Bd. of Com'rs of Caddo Levee Dist.*, 109 So. 816, 818 (La. 1926) ("[T]he difficulty one may have in performing a contract is simply no excuse whatever for not performing it."). Moreover, in *Popich v. Fidelity & Deposit Co. of Maryland*, 245 So. 2d 394, 396 (La. 1971), the Supreme Court of Louisiana held that "[t]he fact that conditions after [Hurricane Betsy] presented difficulties to the contractor in the performance of his obligations is remote, and will not relieve him or the surety from their contractual obligations." Indeed, it has been observed that the "settled Louisiana jurisprudence" precludes an impossibility argument where the agreement between the parties "can still be performed." *Carbone*, 962 So. 2d at 1107-08.

Although a decision from the Supreme Court of Louisiana addressing whether it can be considered impossible to make rental payments in light of significant disruptions to one's business could not be found, the Court concludes that the Defendants' argument in this case is precluded by the above authorities. Here, unlike *Dallas Cooperage*, *Popich*, *Citadel*, and most other cases where similar arguments have been made, the Defendants' performance merely consisted of making rental payments under the leases. Utilizing the terminology of *Dallas Cooperage*, the "article" that the Defendants were obligated to deliver in this case was money, and it was obviously immaterial to the Plaintiff how the Defendants secured the money to service the leases. Should the Defendants have been unable to earn income giving tours in the months following Hurricane Katrina, for whatever reason, they were obligated to procure income from another source to service the leases. *See Picard*, 109 So. at 819 (noting that unexpected difficulties encountered by the defendant in carrying out his contractual obligations were "risks within the limits of his undertaking, and he took them to that extent as a necessary incident to his

8

having entered the contract at all") (internal quotation omitted); *West v. Cent. Louisiana Limousine Serv., Inc.*, No. 03-373 (La. App. 3 Cir. 10/1/03), 856 So. 2d 203, 206 ("Louisiana Civil Code Article 1873 places a high standard on an obligor and calls for a common sense approach to alternatives which would satisfy its performance.").

Indeed, as only one example, business interruption insurance would likely have supplied an alternative flow of income under the circumstances of this case. Having failed to procure such insurance prior to Hurricane Katrina, perhaps the Defendants could have secured a new line of credit and/or moved their business to a new location following the storm. *See, e.g.*, Saul Litvinoff, *The Law of Obligations* § 16.17, in 5 *Louisiana Civil Law Treatise* (2d ed. 2001) ("If performance is still possible in spite of the obstacle, the obligor must fulfill his obligation at any cost, whatever the sacrifice. . . . [Obligors] are supposed to apply the totality of their resources, even to face ruin if necessary, in order to honor their promises."). Whatever the potential alternatives in this case, the Defendants' argument, taken to its logical extreme, would allow anyone financially harmed by Hurricane Katrina to avoid their contractual obligations altogether. Such a result is obviously untenable and it is one that this Court believes the Supreme Court of Louisiana would reject. While Loews' inability to conduct its business in the months following Hurricane Katrina, resulting from the devastation caused by the storm, the subsequent levee failures, and the commandeering of its buses, undoubtedly made making the lease payments more difficult, it cannot be said that these events rendered performance impossible in this case. *See Carbone*, 962 So. 2d at 1106 ("[A]lthough [Hurricane Katrina's] damages left some obligations impossible to fulfill, not all contracts are nor should they be rendered dissolved unless the law requires.").

### III.     CONCLUSION

Accordingly, for the foregoing reasons, IT IS ORDERED that the Plaintiff's Motion for Summary Judgment (Rec. Doc. 16) is GRANTED and the Defendants' Motion for Summary Judgment (Rec. Doc. 17) is DENIED.

IT IS FURTHER ORDERED that the Plaintiff shall prepare and submit a proposed form of judgment no later than January 14, 2008.

New Orleans, Louisiana, this __8th__ day of January, 2008.

_____
UNITED STATES DISTRICT JUDGE